**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JOSEPH R. POLLOCK, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO.: |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| MANHEIM, Inc., ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff, Joseph R. Pollock ("Plaintiff" or "Pollock") and files this Complaint against Defendant Manheim, Inc. ("Manheim" or "Defendant"), as follows:

**INTRODUCTION**

1.

This is an action for age discrimination, brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA").

**JURISDICTION AND VENUE**

2.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

- 1 -

3.

Venue is proper in this district and division because Defendant resides herein, and the events giving rise to this matter occurred herein pursuant to 28 U.S.C. § 1391(b)(1).

## PARTIES

4.

Pollock is a citizen of the State of Georgia and a resident of Forsyth County, Georgia. At the time of the adverse employment actions identified herein, Pollock was 63 years old and protected against age discrimination by the ADEA.

5.

Manheim is a domestic corporation that conducts substantial business in Georgia and has a registered agent in Georgia, and is subject to the jurisdiction of this Court.

6.

At all times relevant to this Complaint, Manheim was an "employer" as that term is defined by the ADEA. Manheim may be served with process through its registered agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

## **FACTS**

7.

At the time of his termination, Pollock was employed by Manheim as a Sales Manager with National Phone Based Sales.

8.

As a Sales Representative, his position included working with customers to set appointments for the outside sales team and to help close sales on "if" bids.

9.

Plaintiff was well-qualified for his position and performed his job in a satisfactory manner in all respects.

10.

On November 11, 2010, Plaintiff was terminated from his position with the cause being listed as a "reduction in force."

11.

The Vice President of Group Sales, Susie Heins, told Plaintiff that he "did not fit the profile for the new team."

12.

Approximately three to four weeks prior to Plaintiff's termination, Manheim required all sales representatives to re-interview for their jobs.

13.

Of the fourteen sales employees who were interviewed, five employees were terminated, including Plaintiff. All but one were over the age of 40.

14.

Of the nine who were retained, all but two were under the age of 40 and the two that were over the age of 40, were both 41 years of age. This was the õnewö sales team of which Heins told Plaintiff he did not fit the profile.

15.

Leading up to the RIF, Plaintiff was subjected to a series of insults about his age from co-workers and other managers and directors.

16.

In May 2010, two employees made jokes about Plaintiff being forgetful due to him being old.

17.

Also, in May 2010, Ben Gutwein, Director of Trade Desk Sales, told Plaintiff he would be offered a position on the õnewö team, but not as a manager.

18.

After the conversation with Gutwein, Plaintiff complained to human resources about not being retained as a manager and told human resources that he believed it

was because Gutwein wanted younger managers on his team.

19.

Plaintiff told human resources that Gutwein had called him "the old man".

20.

In addition, Plaintiff told human resources how he was often the butt of "old" jokes such as, "did they serve potatoes at the Last Supper"; "how tall was Moses"; and if Plaintiff forgot something, the group would refer to him as "Walter" the forgetful older, professor on the television show FRINGE; and how Plaintiff was forgetful because he was old.

21.

Human resources told Plaintiff she would look into it, but Plaintiff never heard another word about his complaints and comments about his age continued.

22.

In June 2010, Tony Montague, a sales manager, asked Plaintiff in the presence of a co-worker, if he "needed to use his AARP card to operate the elevator."

23.

Then Montague and another male employee stated to Plaintiff, "you know how old guys do; they say whatever is on their mind."

24.

In or around June 21, 2010, Plaintiff attended a team outing. On the bus ride, Plaintiff fell asleep and a photograph was taken of him that placed him in an unflattering light.

25.

The photograph was distributed via email to Plaintiff's manager with the knowledge of his director and to several other employees. The picture made Plaintiff the butt of a joke for the entire department. The email was titled: "Disco nap before Braves game".

26.

Plaintiff went to another director in a different department about the picture incident and how it upset him. The director, Amanda Savage, told Plaintiff it would be best if he did not do anything about the incident.

27.

In July 2010, Montague asked Plaintiff if he could still see in color in reference to a slide show that Plaintiff suggested be shown and distributed in color.

28.

Another example of Plaintiff being subjected to comments because of his age was when a male employee was telling Plaintiff he had a call with a dealer who was

born in 1931, which made him 79 years of age, and the employee told Plaintiff that "he was catching up with him." Montague "high-fived" that employee.

29.

On November 3, 2010, Plaintiff went to the Social Security office to check into some details regarding his account. Montague asked Plaintiff where he had been and Plaintiff told him. Plaintiff went on to tell him that he could not change the benefits for his wife until he reached full retirement age at 66, to which Montague replied, "that's next year, right?"

30.

Plaintiff was subjected to a series of jokes and comments regarding his age and the true reason Plaintiff was selected for the reduction in force was because of his age.

31.

Upon information and belief, Gutwein was informed by human resources about his complaints, because Plaintiff was selected for the RIF in retaliation and was not retained as he had previously been told by Gutwein that he would be retained.

32.

As a consequence of being terminated because of his age, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on November 16, 2010, and upon receipt of a Notice of Right to Sue, filed suit.

33.

As a result of Defendant's unlawful conduct, Plaintiff has suffered mental and emotional distress, as well as lost wages and benefits of employment, including but not limited to diminished pension benefits and injury to his career path.

## COUNT ONE

## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

34.

Manheim selected Plaintiff for the RIF based on his age, or in the alternative, employed criteria which had a significantly disparate impact on older employees such as Plaintiff, in violation of the ADEA.

35.

Leading up the RIF, Plaintiff was subjected to a constant barrage of comments and jokes due to his age.

36.

Plaintiff was demoted due to his age when Gutwein told Plaintiff he would be on the "new" sales team, but not as a manager

37.

No employees over the age of forty-one were selected to remain employed with Defendant as a result of the RIF.

38.

Defendant's actions were willful and knowing.

39.

Defendant is liable for all damages resulting from its retaliation against Plaintiff, entitling Plaintiff to all legal and equitable remedies available under the law, including liquidated damages, attorneys' fees and costs, compensatory damages, all other benefits of employment, and full back pay.

## **COUNT TWO**

## **RETALIATION IN VIOLATION OF THE ADEA**

40.

Plaintiff complained to human resources in May 2010 about Gutwein demoting Plaintiff from manager for the "new" sales team.  Plaintiff told human resources that he believed his demotion was because of his age.

41.

Plaintiff complained to human resources about being subjected to age comments.

42.

The age comments continued even after Plaintiff complained to human resources.

43.

Upon information and belief, Gutwein was informed about Plaintiff's complaints about Gutwein demoting Plaintiff from manager.

44.

As a result of Plaintiff's complaints to human resources, Plaintiff was not selected at all for the "new" team and was terminated due to an alleged RIF.

45.

Defendant is liable for all damages resulting from its retaliation against Plaintiff, entitling Plaintiff to all legal and equitable remedies available under the law, including liquidated damages, attorneys' fees and costs, compensatory damages, all other benefits of employment, and full back pay.

**WHEREFORE**, Plaintiff prays that this Court:

(a) Grant Plaintiff a trial by jury on all issues;

(b) Award to Plaintiff all lost wages and the value of all lost benefits of employment, from the date of his termination until the date of judgment;

(c) Award to Plaintiff liquidated damages in an amount equal to his lost wages and the value of all lost benefits of employment, from the date of termination until the date of judgment;

(d) Deem Plaintiff a prevailing party and award his attorneys' fees and expenses of litigation;

(e) Award Plaintiff pre-judgment and post-judgment interest;

(f) Award Plaintiff compensatory damages in an amount to be determined by the enlightened conscience of a jury;

(g) Award Plaintiff punitive damages against Defendant in an amount to be determined by the enlightened conscience of a jury;

(h) Award Plaintiff such other equitable or monetary relief as the Court deems just and proper, including reinstatement, reformation and restoration of retirement and other benefits and emoluments of employment, and retroactive seniority for all purposes.

Respectfully submitted, this 19th day of April, 2013.

/s/ Meredith J. Carter
Matthew C. Billips
Georgia Bar No. 057110
Meredith J. Carter

                                                                                                        Georgia Bar No. 325422

BILLIPS & BENJAMIN LLP
One Tower Creek
3101 Tower Creek Parkway
Suite 190
Atlanta, GA 30339
Telephone:  (770) 859-0751
Facsimile:   (770) 859-0752
billips@bandblawyers.com
carter@bandblawyers.com